McFarlaND, J.,
delivered the opinion of the court:
On the 23d of November, 1865, the legislature passed *103 an act [Acts 1865-66, ch. 9] to amend the general internal improvement act of the 11th of February, 1852 [Acts of 1851-52, ch. 151]. The tenth section of the act of 23d of November, 1865, is as follows: “Be it enacted, that any railroad company receiving aid under this act, or the act this is intended to amend, or any amendment thereto, who shall discriminate in their freight or passenger tariff against the business of any city or town or place in this state, or carry freight lower in one direction than another, or refuse to give the citizens of this state equal facilities for transporting their freight to- or from any point they may desire to ship to or from, with the citizens of any other state, whether the act be committed within the limits of this state or not, shall, upon conviction, be fined in the sum of not less than one thousand dollars nor over five thousand dollars for each and every offense, the same to be collected as other fines and forfeitures are collected, one-half of the same to go to the state1, and the other half to the party aggrieved.”
The plaintiffs bring this suit for themselves and for the use of the state. They declare for the penalty of one thousand dollars. The declaration, in substance, avers that the defendants, being one of the railroad companies receiving aid under the act referred to, or its amendments, and owning and running a railroad from Bristol to Chattanooga, in this state, did on a certain time in their freight tariff, discriminate against the business of the town of Knoxville, in this: that for freight upon this road, from Bristol to Knoxville, upon 100 pounds each of first, second, third, and fourth class freights, shipped from New York to' the plaintiffs, at Knoxville, they being engaged in. business there, the defendants charged and received a large sum, to wit, $25,- and on the same day the defendant shipped over their same road freights of the same weight, class, and description from parties residing out of the state, to unknown parties in Nashville, for which they charged and received a less sum, to wit, five dollars, although the last named goods *104 were shipped a greater distance over the defendant’s road than the plaintiff’s goods, to wit, one hundred miles further.
The discrimination charged in this declaration consists simply in charging higher rates for freights over the defendants’ road to the plaintiffs at Knoxville, than for similar freights shipped to parties at Nashville. It is assumed that the act in question forbids this.
The questions discussed were raised by a demurrer to the declaration, which was sustained by the circuit judge, and the plaintiffs, disclaiming to amend, their suit was dismissed, and they have appealed. [See same case previously before the court, reported in 6 Bax., 69.] A controlling question is, whether or not the declaration makes a case for recovery under the tenth section of the act of the 23d of November, 1865, above quoted. It seems to- me that there are serious difficulties in enforcing this as a penal statute, both on account of the uncertainty as to what is-prohibited, and also as to the mode of its enforcement.
It will be observed that the section points out, separately, three tilings intended to be prohibited. Erst, the railroads shall not discriminate in their freight or passenger tariffs against the business of any city, town, or place in this state. Second, they shall not carry freights loiv^er in one direction than another, and, third, they shall not refuse to .the citizens of this state equal facilities with the citizens of other states who transfer by their freights.
The two latter clauses need not be noticed, as this action is predicated alone upon the first — that is, that the defendant has discriminated in its freight tariff against the business of Knoxville. This, then, is the clause to- be construed. The language is, “any railroad company .... who shall discriminate in their freight or passenger tariff against the business of any city or town or place in this state,” etc., shall, upon conviction, be fined, etc. The question very naturally arises, as to what is meant by discriminating in the freight and passenger tariff against the business of a place. The section, as we have seen, does not define the *105 act or acts intended to -be prohibited, except in tbe general terms quoted. Does this clause require railroads to carry freight at tbe same rates, per mile, without regard to tbe distance it is to be carried, tbe quantity, or other circumstances attending it? Is all discrimination in this respect prohibited? In other words, must they carry through and local freights at the same rates? Is this the sort of discrimination intended to be prohibited? We suppose it is the universal custom of most, if not all railroads, to make a difference in the rates charged upon through and local freights and passengers. There are many reasons why a railroad can afford to receive a train of loaded cars at one end of their road and transport it to the other without handling or -change, at a much less rate than they could afford to receive a small quantity of freight at one depot, and transport a short distance, and deliver it at another. The difference in the rates charged may be no more than reasonable, in view of the difference in the labor and trouble expended, and other circumstances attending, which may be properly considered in fixing the rates to be charged. A carrier may well be justified in carrying full loads a considerable distance at less rates than he would charge for small packages a short distance.
Again, railroads doubtless, in fixing the rates charged upon through freights, are controlled in a great degree by competition with competing routes. A place so situated, as Nashville, for instance, having different routes of transportation from New York, may reasonably be supposed to-receive freights at less rates than a place hot having this advantage. This is one of the results of competition in business. It is governed by the laws of trade and commerce. It would be difficult, if not unwise, to attempt to change these results by legislation, though the exercise of the-power thus obtained may be controlled so- as to prevent abuses. In view then of what may he regarded as the custom of all railroads to make a difference in the rates charged on passengers and freights, on account of the distance the *106 freight or passengers may be carried, or in other words, between what railroads term through and local freights and passengers, and in view of the fact that to a reasonable extent, this may well be justified by the circumstances, I conclude that the legislature did not, by this act, intend to prohibit railroad companies altogether from making such distinctions. Had such been the purpose, it would have been expressed in unambiguous language.
This difference, however, between through and local rates, might be carried to such an unreasonable extent as to amount to unjust discrimination, and come within the meaning of this statute. If the declaration should malee a case showing unjust and oppressive discrimination against the business of a city, town, or place in this state, by showing a state of facts from Avhich this would appear, or it be charged that the difference Avas wantonly and oppressively made for the purpose of discrimination, then an action might be maintained, but it is not proper to undertake to point out what would make a case. It is sufficient to- say that in my opinion, this declaration does nlo more than make a case against the defendant for charging different rates for goods shipped over part of their road to Knoxville, from what.they charged for similar freights shipped over the entire length of their road, en route to Nashville. The amount of this difference, as stated in the declaration, in the proportion of five to one, would evidently be very unjust and oppressive, but this part of the declaration, as is manifest, being stated under a videlicet, is not material and need not be proven. The averment would be supported by proof tbat there was a difference in tbe rates, no' matter bow small. This being so, tbe declaration only makes a case where different rates have been charged upon through and local freights, and this, in my opinion, will not sustain the action, and is not forbidden by tbe act.
Whether the action could be maintained upon an allegation tbat the difference between through and local rates ivas so great as to be unreasonable and oppressive, I should *107 very much doubt; in fact, I incline to the opinion that it could not.
For, if we assume that the act does not forbid altogether any difference, then how much difference would amount to unjust discrimination? The act does not define, but it would then have to be left to a jury, upon proof, to say whether the difference was discrimination or not. This, I think, could not be done under a penal statute. The same difference might, in one instance, be held a violation of the law, and in another, not.
The charter fixes a limit above which the defendant cannot go in its charges; and if this act intended to make an unreasonable distinction between through and local freights a penal offense, it should have fixed a limit upon the exercise of this power, or in other words, that the difference should not exceed prescribed rates, so that the court would have nothing to do but ascertain if the act had been committed.
In actions of a civil character, different rules might prevail. For it will be remembered that this is not an action to recover back an amount unjustly paid, but to recover a penalty of from $1,000 to $5,000, which, if recoverable at all, is to be recovered without regard to the amount unjustly paid by the plaintiffs. But I do not undertake to point out in what cases the action would lie..
In another view, it seems to- me that this declaration does not make a case of discrimination against the business of Knoxville. To discriminate against one place would 'mean to discriminate in favor of another place; in this instance, in favor of Nashville. IIow? By carrying freights in the direction of Nashville at lower rates than they are brought to Knoxville. If the defendant be compelled to adopt uniform rates, it may do so, without reducing the rates to Knoxville, but by raising the rates to Nashville. This would not benefit Knoxville, and would not necessarily injure Nashville, for as we may judicially know, there are other routes from New York to- Nashville, over which the *108 latter place might obtain freights without any increase id costs.
1 have conceded that a civ-il action might be maintained under this statute.-
There are other questions I have not discussed.
IIeaixeRIOK, Ch. J’.,
delivered the following opinion of the court:
If the railroad company received in their depot freight to be loaded at .Bristol, and unloaded, stored, and delivered at Chattanooga, at twenty-live cents per hundred, and received same kind of freight to be stored and delivered at Knoxville, at fifty cents, that would be discrimination against Knoxville and its business; because it would be requiring Knoxville to pay more for less distance for the same kind of service rendered, for which Chattanooga paid less. But in the case of through freight, this road does not use its own cars, does not receive, store, load or unload, and the service and expense to this company is, of course, less — how' much less we have no means of determining.
The diminished charge may be out of proportion, to the diminished service, but the two kinds of service are different, and any road can afford to transport through freight a.t less prices than it can afford to transport freight it must receive in its depot, then load in its cars, and then unload again and store in its depot, because it has none of the labor or expense of handling, etc.; but how much less the courts cannot know, and have no power to determine.
It will not do to hold that local freight must be transported at the same rates as through freight, or that charges must, for short distances, be upon the exact rate charged for longer.
The difference between the services necessary to be performed in through and local freights, are so manifest that the propriety of difference, in the charges for such services is apparent; and to hold that the company could not *109 make any difference, would be to bold that for greater service, the company should charge no more than for a less service.
This idea strikes me as conclusive against the power of the court to declare that a railroad company, in discriminating in its charges between through and local freight, is guilty, under our statutes, of discriminating against those places charged local rates for local freights.
The two services are essentially different in their character and extent of services and labor required.
The judgment in this case, dismissing the suit upon demurrer to thq declaration, is affirmed — four judges concurring in the judgment — Judges Sneed and Turney, upon the ground that the act in question contemplates a criminal prosecution. Oh. J. Deaderick and Judge McFarland, conceding that a civil suit may be maintained, are of opinion that the declaration does not make a case contemplated by the act, and file an opinion.
Judge Freeman, who was on the bench when the cause was argued, files a dissenting opinion, holding that the judgment should be reversed. Judge Lea, being incompetent by reason of being concerned in a similar case, expressed no opinion.